**REYNOLDS METALS COMPANY, Inc.,**
**Appellant,**

**v.**

**Mike THOMPSON et al., Appellees.**

Court of Appeals of Kentucky.

May 22, 1964.

As Modified on Denial of Rehearing
Sept. 18, 1964.

Carl L. Wedekind, Jr., Lloyd Cardwell, Stites, Peabody & Helm, Louisville, for appellant.

Richard H. Nash, Davis M. Howerton, Jr., Marshall, Cochran, Heyburn & Wells, Louisville, for appellee.

JOHN B. RODES, Special Commissioner.

This is an appeal from a judgment entered in the Jefferson Circuit Court awarding the appellee, Mike Thompson, $5,500 for personal injuries sustained in an industrial accident at the Reynolds Metals Company plant in Louisville on March 7, 1961.

This case is simplified since appellant filed a statement of points on which it intended to rely on this appeal. Such statement reads as follows:

(1) No negligence was proved against appellant, Reynolds Metals Company, Incorporated.

(2) Even if appellant, Reynolds Metals Company, Incorporated, were negligent (which is not admitted), the appellee was guilty of contributory negligence as a matter of law.

(3) The appellee failed to prove the standard of care required of appellant's agents in the operation of the forklift truck and thus the court was in error in submitting the case to the jury.

We shall therefore confine ourselves to the points mentioned above and first we

shall state the facts. On March 7, 1961 Mike Thompson drove a tractor-trailer loaded with aluminum ingots to the Reynolds plant in Louisville for the purpose of delivery. The tractor-trailer was backed up to the docks of the Reynolds plant where it was the job of Thompson to remove the tailgates. These tailgates were fitted into vertical grooves in the body of the truck and had to be removed in order that the Reynolds employees could enter with a dolly to unload it.

When Thompson attempted to remove the right tailgate he found it was stuck and resisted his efforts to lift it. The Reynolds foreman needed the ingots without delay and ordered Thompson to stand back or step aside. The foreman then took sole charge of the operation of lifting the tailgate. Thompson did step back in the truck about four or five feet from the tailgates and the Reynolds foreman ordered one Cockeril, who was operating the dolly, to move in and lift the gate. He thus assumed sole charge of this operation. The dolly was an implement operated by a motor equipped with prongs which could be pushed under a load and power exerted to lift same. On this occasion the prongs of the dolly were placed underneath the lower bar of the gate and Cockeril used its power to break the tie or embrace of the tailgate with the groove in the body of the truck. In doing so he was in sole charge of this operation and in sole charge of the extent of the force or thrust which would be employed to break the tie and to lift the gate. In applying the pressure from the dolly, its operator gave the gate such a thrust that it suddenly became dislodged and, according to Thompson, was thrown four or five feet forward and struck him in the face.

It is claimed by appellant that there was no evidence of any negligence on its part. The important fact is that the Reynolds foreman was a volunteer in taking charge of the operation of lifting the gate and the operator of the dolly was in sole charge of the pressure employed.

■ It is claimed that the court gave the jury no standard by which it might determine whether the Reynolds employee was negligent. But the law raises the standard which is one of exercise of ordinary care.

The English maxim "Sic Utere Tuo Ut Alienum Non Laedas" applies here. This is paraphrased in 38 American Jurisprudence, Section 14, page 656, as follows:

"* * * Accordingly, the law imposes upon every person who undertakes the performance of an act which, it is apparent, if not done carefully, will be dangerous to other persons or the property of other persons, the duty to exercise his senses and intelligence to avoid injury, and he may be held accountable at law for an injury to person or to property which is directly attributable to a breach of such duty. * * *."

It is also said in Section 17, page 659:

"* * * The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies. * * *."

See also Shell v. Town of Evarts, 296 Ky. 602, 178 S.W.2d 32.

Whether the operator of the dolly used ordinary care in lifting the tailgate was a question for the jury and the trial court properly submitted this question under an instruction defining ordinary care as that which an ordinarily prudent person would exercise under the same or similar circumstances.

A greater emphasis is placed by appellant upon the contributory negligence of Thompson who, it is claimed, having been warned to stand aside should have placed himself out of the possibility of injury. It is claimed that as a matter of law Thompson assumed the risk by standing four or five feet distant from the operation of lifting the gate.

■ It was written in Sutherland v. Davis, 286 Ky. 743, 151 S.W.2d 1021 as follows:

"The assumption of risk of a danger amounts to contributory negligence so as to bar recovery when the injured person is aware of the conditions which create the danger and in addition thereto appreciates in his own mind the danger attendant upon such conditions. * * *"

■ Now let us examine the record. There were four witnesses to this accident. They were Mike Thompson, the injured man; Coy Cockeril, the operator of the dolly; John Rogers, the Reynolds foreman and Joseph Boes, a Reynolds clerk.

Thompson testified:

"Yes, sir, I could have but I thought I was in a safe enough place or I would have done that. The man could see me standing there. * * *."

Coy Cockeril answered the following question thusly:

"Q. And then you assumed that he was in a safe position and you went ahead and put this extraordinary pressure on it?

"A. That's right."

John Rogers testified:

"I told Mr. Thompson to move back, he moved back four to five feet where I considered him to be in a safe position at that time and that is when I turned to leave."

Joseph Boes testified as follows:

"I told him to move back, I didn't know how far he got back, whether it was a safe distance or not, all I knew was I told him to get back."

Here are three men at the scene out of four testifying that they considered the position of Thompson at the time to be safe. Under these circumstances it can hardly be said as a matter of law that he assumed the risk or appreciated the danger.

The trial court properly overruled appellant's motion for a directed verdict and also for judgment notwithstanding the verdict.

Having done so and the jury having been properly instructed, we see no error in the proceedings in the trial court and therefore reach the conclusion that the judgment should be affirmed.

The opinion is approved by the Court, and the judgment is affirmed.